IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00144-WJM-MJW

MICHAEL D. RUDNICK and ANN K. SMITH RUDNICK,

Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION, as SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION, TRUSTEE UNDER THE POOLING AND
SERVICE AGREEMENT DATED AS OF FEBRUARY 1, 2007, GSAMP TRUST 2007-
NC-1;
LITTON LOAN SERVICING, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;
PUBLIC TRUSTEE OF DENVER COUNTY; and
All Unknown Persons Who Claim Any Interest in the Subject Matter of this Action,
Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

COME NOW Plaintiffs, Michael D. Rudnick and Ann K. Smith-Rudnick ("the

RUDNICKS") by and through Counsel, and submit this Reply in support of their Motion

for Summary Judgment.

**MOVANTS' REPLY TO DEFENDANTS' RESPONSE
TO MOVANT'S STATEMENT OF MATERIAL FACTS**

1.     The RUDNICKS deny that New Century was the "Lender."  New Century

was the nominal lender only, was in fact a loan originator and servicer under the terms

of the Pooling and Servicing Agreement ("PSA") for the Trust for which Defendant

BANK OF AMERICA presently serves as successor trustee.[1]

---

[1] Third Amended Complaint ("Complaint"), ¶¶8 & 19.

1

2.      Defendants' admission accepted as admission of material fact that MERS is solely a "nominee" in the Deed of Trust.

3.      Defendants' admission accepted as admission of material fact that BANK OF AMERICA appears nowhere on any documents produced as evidence in this case.

4.      Defendants' admission accepted as admissions of material facts that: (a) Defendants' produced a photocopy of a page containing a purported endorsement in blank of the RUDNICKS' Note, for the first time in these proceedings, on October 4, 2010; and (b) the purported endorsement has not been authenticated by Defendants. The RUDNICKS deny that the purported endorsement is self-authenticated, deny the legal conclusion that the RUDNICKS' Note is "held" by BANK OF AMERICA, and deny that anything other than conflicting copies of the Note have been provided to the RUDNICKS.

5.      Defendants' admission accepted as admission of material fact.

6.      Accepted, with apologies to the Court and Defendants for omitting Statements of Fact numbered 6-9.

10.     The RUDNICKS deny that the Note, in the form filed with Defendants' Response as Exhibit A-1, was filed in the foreclosure proceeding.

11.      Defendants' admission accepted as admission of material fact that the RUDNICKS' Note bears no intervening endorsements whatsoever.  The RUDNICKS deny that the Note requires no further endorsement.

12.     Defendants' admission accepted as admission of material fact that the Note bears no endorsement whatsoever by anyone identified as a last endorsee as

"successor by merger to" anyone identified as a predecessor.  The RUDNICKS deny

that the Note requires no further endorsement.

13.     Defendant's denial renders the RUDNICKS Statement 13 a fact in dispute.

14.     Defendant's denial renders the RUDNICKS Statement 14 a fact in dispute.

15.     Defendant's denial renders the RUDNICKS Statement 14 a fact in dispute.

16.     The RUDNICKS deny that their expert's report is irrelevant and that it

does not address issues in this case.

17.     Defendants' admission accepted as admission of material fact.

18.     Defendants' admission accepted as admission of material fact.

19.     Defendants' admission accepted as admission of material fact.

20.     Defendants' admissions accepted as admissions of material facts.  The

RUDNICKS deny that Defendants have produced all documents requested during the

deposition, and deny that the documents requested are not relevant to any issue in this

case.  In accord with Defendants' agreement to allow supplementation of this Motion

based on documents requested during the deposition, the RUDNICKS submit the

following:

a.      At his deposition, Mr. Spradling testified he would provide documentation

showing when the RUDNICKS' loan was transferred to LITTON for servicing, that

he "believes" the loan was transferred to BANK OF AMERICA as Trustee prior to

the transfer to LITTON for servicing, that he was not certain whether the LITTON

system would have a record of whether or when the loan would have been

transferred to BANK OF AMERICA, but he would provide documentation from

3

LITTON's system concerning any transfers.[2]  The only documentation provided after the deposition was a line with code numbers, described by Mr. Spradling as ". . . the cross reference on the Rudnick loan which we received at time of transfer. . .".[3]  This "cross reference" requires further explanation and/or testimony from a competent witness, names only "Litton" and "Avelo" in column headings, contains no dates of any transfer to or from LITTON or Avelo, and no reference to any code numbers or any other information in reference to BANK OF AMERICA.

b.      At his deposition, Mr. Spradling testified he would provide the Mortgage Loan Schedule for the Trust for which BANK OF AMERICA serves as Trustee.[4]  The Mortgage Loan Schedule has not been provided as of the date of the instant Reply.

c.      At his deposition, Mr. Spradling testified he would provide documentation of the source of his authority to testify on behalf of BANK OF AMERICA.[5]  The only documentation provided consists of a Power of Attorney ("POA") executed on August 13, 2010 – more than one year after the initial foreclosure was commenced on the RUDNICKS' home.[6]  The POA authorizes foreclosure and related activities consistent with the terms of the PSA, but the undersigned has

---

[2]  Exhibit 12: 81:23 – 84:17, *passim.*  Exhibits 1-13 were filed with the RUDNICKS Motion for Summary Judgment.  Exhibits filed with the instant Reply commence numbering at Exhibit 14.
[3]  Exhibit 14.
[4]  Exhibit 12: 85:9 – 87:1
[5]  Exhibit 12: 74:16 – 75:13.
[6]  Exhibit 15.

found no reference in the POA to any express authority to testify on behalf of BANK OF AMERICA.

d.     At his deposition, Mr. Spradling testified he would provide printouts of information concerning the RUDNICKS' file contained in LITTON's "RADAR" system.[7]   Counsel for Defendants provided a 22-page "Comm-Log"[8] which appears to be the promised printouts.

e.     At his deposition, Mr. Spradling testified, and his Counsel confirmed, he would provide electronic records, and printouts of electronic records, if printouts could be made, of LITTON's "ModTrack" database concerning everything that was done on the RUDNICKS file, including loan modification considerations under requirements of HAMP program.[9] No electronic files or records have been provided, and no information, documents, or other materials showing how HAMP program requirements are incorporated into loan modification decisions on the RUDNICKS loan have been provided.  What has been provided is a 3-page itemization that appears to be a ModTrack report of some kind,[10] but which requires further explanation and/or testimony from a competent witness.

f.     At his deposition, Mr. Spradling testified he would provide the identity of person(s) at LITTON responsible for complying with HAMP reporting requirements.[11]  This information has not yet been provided.

---

[7]  Exhibit 12: 70:11-16
[8]  Exhibit 16.
[9]  Exhibit 12: 54:1 – 59:8.
[10]  Exhibit 17.
[11]  Exhibit 12: 60:19 – 61:12.

g.      At his deposition, Mr. Spradling testified he would provide the identity of

person(s) at LITTON who would have personal knowledge of whether LITTON

considered changes in principal, interest, and other factors allowed by PSA in

deciding whether to modify the RUDNICKS' loan.[12] This information has not yet

been provided.

21.     Defendants' admission accepted as admission of material, relevant facts.

22.     Defendants' admission accepted as admission of material, relevant facts.

23.     Defendants' admission accepted as admission of material, relevant facts.

24.     Defendants' admission accepted as admission of material, relevant facts.

25.     Defendants' admission accepted as admission of material, relevant facts.


**ARGUMENT**

**I. The Foreclosure Must Be Vacated, and the Public Trustee's
Deed Voided, as a Matter of Law, Due to Lack of a Mandatory Hearing.**

For reasons briefed in more detail in the RUDNICKS' pending Motion for Partial

Judgment on the Pleadings, and in the instant Motion, the Order Authorizing Sale

("OAS") in the Rule 120 proceeding must be vacated, and the Public Trustee's Deed

based thereon voided, as a matter of law, because the Rule 120 Court failed to hold the

mandatory hearing.  *Plymouth Capital Co., Inc. v. District Court*, 955 P.2d 1014, 1015-

1016 (Colo. 1998) [Rule 120 strikes balance between efficiency and debtors' rights;

court may dispense with hearing if debtor files no response, but ". . . <u>[i]f a response is

filed, the court must hold a hearing. . . .".</u>] (emphasis added).  *See also Rosenfeld v.*

---

[12] Exhibit 12:34:3 – 36:3.

*HSBC Bank, USA,* 2010 U.S. Dist. LEXIS 90218 *19-20 (D. Colo. 2010) [citing *Plymouth Capital, supra*].

Defendants argued in their Response to the RUDNICKS' Motion for Summary Judgment (hereinafter "Response") that due process was accorded to the RUDNICKS because, in part, Defendants misapprehended that the RUDNICKS were provided a hearing.[13]  Defendants acknowledged in their Reply in support of their Motion for Summary Judgment that, in fact, there was no Rule 120 hearing, but nonetheless continue to argue that due process was provided to the RUDNICKS, under general principles of law that require a meaningful opportunity to be heard.  These same principles provided a foundation for the Court's reasoning in *Plymouth Capital, supra,* and produced that Court's black letter holding – " . . . [i]f a response is filed, the court must hold a hearing. . . .".  *Id.* at 1015-1016.  Defendants' invocation of the due process principles that created the right to a mandatory 120 hearing, in an attempt to eliminate that right, is misguided.  The OAS must be vacated because there was no hearing.

### A.  Defendants Claim for Possession Must Be Denied

Defendants' claim that they are entitled to possession of the RUDNICKS' home[14] is premised on the Public Trustee's Deed.  Accordingly, this claim must fall as a matter of law upon vacating the OAS and voiding the Public Trustee's Deed.  Ownership must be determined before possession can be determined.  *In Re: Beeghly,* 20 P.3d 610, 614-615 (Colo. 2001), *Lindsay v. District Court,* 694 P.2d 843, 846 (Colo. 1985);  *Reitze v. Humphreys,* 125 P. 522 (Colo. 1912), and *Hamill v. Bank of Clear Creek County*, 45

---

[13]  Response, Argument D at 13.
[14]  Response, Argument E at 13-14.

P. 411, 22 Colo. 384 (1896).  Ownership is at issue in this case, and was not finally

determined in the Rule 120 proceeding.  *Rosenfeld, supra* at *19-20.

## II. The Purported Endorsement of
## the Note Is Not Self-Authenticating

Defendants' argue that the purported endorsement of the RUDNICKS' Note is

self-authenticating.[15]  This argument is defective, for several reasons.

First, Defendants admit in their Response[16] that a photocopy of a page

containing the purported endorsement in blank of the RUDNICKS' Note was produced

in discovery, for the first time in this case, in Response to the RUDNICKS' Request for

Production of Documents, on October 4, 2010.  Yet they argue that the authenticity of

the purported endorsement should have been specifically challenged in the RUDNICKS'

most recent Complaint[17] – which was filed August 25, 2010, several weeks before the

purported endorsement was disclosed in discovery. This argument is patently defective,

simply because the Complaint could not make specific allegations challenging a

document that had not yet been produced in discovery.  If the belated production of the

unauthenticated purported endorsement requires amendment of the Complaint to

conform to evidence, the RUDNICKS respectfully request leave to do so.

Second, the Complaint alleges in six independent numbered paragraphs[18] – all of

which were admitted by Defendants in their Answer – that there is ". . . no record . . . in

any pleadings or exhibits filed by BANK OF AMERICA . . ." in the Rule 120 proceeding

---

[15]  Response, Argument C, at 10-12.
[16]  Response to Plaintiffs' Statement of Material Facts No. 4
[17]  Third Amended Complaint, filed August 25, 2010 (hereinafter "Complaint").
[18]  Complaint, ¶¶21, 23, 25, 27, 29, 32.

". . . of any sale or assignment of the RUDNICK's Note or Deed of Trust from NEW CENTURY. . ." to an intermediary party identified in the PSA, or from any intermediary parties to any other parties, and specifically, in ¶29 of the Complaint, that ". . . there is no record . . . in any pleadings or exhibits filed by BANK OF AMERICA in the Rule 120 proceeding in Case No. 2009 CV 7496, of any sale or assignment of the RUDNICK's Note from anyone to anyone."  Defendants' admissions of no record of any sale or assignment of the Note from anyone to anyone establish that there was no sale or assignment of the Note from anyone to anyone, as a matter of law.  Yet Defendants claim, belatedly, and in direct contradiction of their admissions, that they are now in possession of a purported assignment of the Note by endorsement.   The allegations of the Complaint – and admissions of the Defendants in their Answer – are more than sufficient to place the burden on Defendants to authenticate the purported endorsement, belatedly produced in discovery for the first time on October 4, 2010, under Fed. R. Evid. 902(9) and C. R. S. §4-3-308.

Third, the undersigned recently discovered, and disclosed to Defendants, various public documents containing various forms of signatures that all claim to be the signatures of a person identified as "Stephen L. Nagy, V.P., Records Management, New Century Mortgage Corporation"[19]— the same name and title on the purported endorsement belatedly produced by Defendants.  These public records raise questions of fact concerning the authenticity of the purported signature on the purported endorsement belatedly produced by Defendants in this case, and would require

---

[19]  Exhibit 18.

discovery to challenge the authenticity of the purported endorsement relied on by

Defendants even if the Defendants' arguments under Fed. R. Evid. 902(9) and C. R. S.

§4-3-308 were meritorious.[20]

Defendants argument that the purported endorsement is self-authenticating must

be rejected.

### III. BANK OF AMERICA Was Not the Real Party in Interest, and Lacked Standing, in the Foreclosure Proceeding.

Defendants' arguments in that BANK OF AMERICA was the real party in interest

and had standing in the foreclosure proceeding[21] do not address or refute authority cited

in the RUDNICKS' Motion, are defective in several respects, and are premised on the

faulty assumption that the purported endorsement has been proven to be a valid

endorsement or assignment.  This assumption ignores Defendants admissions in their

Answer to the Complaint that there were no transfers or assignments of the Note from

New Century to anyone, or from anyone to anyone; ignores the undisputed fact that the

certified copy of the Note filed in the foreclosure proceeding bore no endorsements

whatsoever; and ignores the fact that the validity of the purported endorsement

belatedly produced in this case raises questions of fact that can only be addressed in

further discovery.  The only witness produced by Defendants for deposition failed to

---

[20]  The RUDNICKS acknowledge that the purported endorsement was also filed as Exhibit A-2 to Defendants' Response to the RUDNICKS' Motion for Judgment on the Pleadings, as a stand-alone document unattached to the RUDNICKS' Note, on April 1, 2010, along with an offer to file the entire original Note with the Court.  The RUDNICKS objected to the admissibility of the stand-alone purported endorsement in their Reply in support of their Motion for Judgment on the pleadings, on grounds that it had been neither produced in discovery nor authenticated by a competent witness.  Accordingly, the RUDNICKS have denied the authenticity of the purported endorsement from the time it first appeared as a stand-alone document.

[21]  Response, Argument B, at 6-10.

authenticate the purported endorsement, and has failed to provide any evidence whatsoever that the Note was transferred to the Trust for which BANK OF AMERICA serves as successor trustee.  Furthermore, the evidence and admissions in Defendants' Answer – of no assignment or endorsement whatsoever – support judgment as a matter of law in favor of the RUDNICKS, not the Defendants.

Defendants rely on a partial quote from *Goodwin v. District Court*, 779 P.2d 837, 843 (Colo. 1989), for the general proposition of law that the real party in interest in a foreclosure proceeding is ". . . that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question. . .". *Id.* The pertinent part of *Goodwin* is a couple lines down from the general proposition of law, i.e., ". . . the requirement that the party seeking an order of sale have a valid interest in the property allegedly subject to the power of sale."  *Id.*  Where – as here – a party has admitted there were no transfers or assignments of the Note relied on in the foreclosure proceeding, and belatedly produced purported endorsements have not been authenticated, there is no evidence that the party has a valid interest in the property subject to the power of sale, under the requirements of *Goodwin, supra.*

Defendants also rely on provisions of Article 3 the Colorado Uniform Commercial Code ("U.C.C."), which govern negotiations and transfers of notes as negotiable instruments, but all of which require <u>evidence</u> to establish the applicability of particular provisions to particular circumstances in which a person claims to have a right to enforce a note.  There is no provision in either the U.C.C. or foreclosure statutes that allows allow a mere "certification" or "statement" under C. R. S. §38-38-101 to serve as

a complete and determinative substitute for evidence under the U.C.C., and no

provision that allows a party that has admitted there were no transfers or assignments

of a Note, and has failed to authenticate a purported "endorsement" that is challenged,

to suddenly become a "holder" under either the U.C.C. or the foreclosure code.

Furthermore, Article 3 provisions, governing negotiable instruments, do not

expressly govern interests in real property.  Provisions in Article 9, governing secured

transactions, recognize that law of real property will govern where there is a conflict

between property law and U.C.C. provisions governing secured transactions.

C. R. S. §4-9-607 provides, in pertinent part:

(b)     If necessary to enable a secured party to exercise . . . the right  . . . to
        enforce a mortgage nonjudicially, the secured party may record in the
        office in which a record of the mortgage is recorded:

        (1)     A copy of the security agreement that creates or provides for a
                security interest in the obligation secured by the mortgage; and

        (2)     The secured party's sworn affidavit in recordable form stating that:

                (A)     A default has occurred; and

                (B)     The secured party is entitled to enforce the mortgage
                        nonjudicially.

*Id.*  Comment 8 to this section provides, in pertinent part:

**8. Rights Against Mortgagor of Real Property**.  Subsection (b) addresses the
situation in which the collateral consists of a mortgage note (or other obligation
secured by a mortgage on real property).  After the debtor's default, the secured
party may wish to proceed with a nonjudicial foreclosure of the mortgage
securing the note <u>but may be unable to do so because it has not become the
assignee of record</u>.  The assignee/secured party may not have taken a
recordable assignment at the commencement of the transaction (<u>perhaps the
mortgage note in question was one of hundreds assigned to the secured party as
collateral</u>). . . .  This section enables the secured party (assignee) to become the
assignee of record by recording in the applicable real property records the

security agreement and an affidavit certifying default.  Of course, the secured party's rights derive from those of its debtor.  <u>Subsection (b) would not entitle the secured party to proceed with a foreclosure unless</u> the mortgagor also were in default or <u>the mortgagee otherwise enjoyed the right to foreclose</u>.

C. R. S. §4-9-607, Comment 8 (emphasis added).

Lest one think that the . . . Courts have exalted form over substance, it is critical to note several concepts. . . .  <u>[W]e are dealing with interests in land – not a security interest in an inventory of plumbing fixtures, in chinchillas, in canned corn, or in a lawn and garden tractor.</u>  Land.  Land is certainly the asset which people deem to be their most important "possession":  There is no other "thing" more important historically in our culture than an interest in land, whether that interest be in a condominium, in a house, or in a farm.  Land.

*In Re Stubbs*, 330 B.R. 717, 730 (N. D. Ind. 2005) [invalidating recorded mortgage due to deficiencies in notarization, even where there was no dispute over identity of individuals who signed document] (emphasis added).

WHEREFORE, the Rudnicks respectfully request that this Court grant their Motion for Summary Judgment, deny the Defendants' Motion for Summary Judgment, and award fees and costs to the RUDNICKS.

Respectfully submitted this 24th day of February, 2011.

THE GASPER LAW GROUP
 *(A duly-signed original is on file at the office of The Gasper Law Group)*

*/s/Stephen A. Brunette*
_____

Stephen A. Brunette
128 S. Tejon Street, Suite 100
Colorado Springs, Colorado  80903
Phone:  (719) 634-7878
Fax:  (719) 358-5515
Email:  stephen@gasperlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2011, I forwarded a true and correct copy of the foregoing via e-mail, to:

E. Dwight Taylor
Beverly L. Edwards
Edwards & Taylor , LLC
2851 South Parker Road, #1200
Aurora, CO  80014
Phone: 303-750-2303
bedwards@et-law.com
dtaylor@et-law.com

Patrick A. Wheeler
Assistant City Attorney
201 W. Colfax Ave., Dept. 1207
Denver, CO   80202
Phone:   (720) 913-3275
Fax:       (720) 913 -3180
patrick.wheeler@denvergov.org
*Attorney for Public Trustee*

THE GASPER LAW GROUP
*(A duly-signed original is on file at
the office of The Gasper Law Group)*

*/s/Stephen A. Brunette*
_____
Stephen A. Brunette